IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 07-cv-00985-MSK-CBS

MARTHA A. CESERY TAYLOR, an individual residing in Florida, and
WALTER Q. TAYLOR, an individual residing in Florida,

        Plaintiffs,

v.

DAVID E. K. PANICO,
JANICE L. PANICO a/k/a JAN PANICO,
CAROL DOPKIN, and
CAROL DOPKIN REAL ESTATE AND RANCH, INC., a/k/a Carol Dopkin Real
Estate, Inc.,

        Defendants.

_____

## OPINION AND ORDER GRANTING AND DENYING
## MOTIONS FOR SUMMARY JUDGMENT
_____

**THIS MATTER** comes before the Court pursuant to Defendants Carol Dopkin and

Carol Dopkin Real Estate and Ranch, Inc.'s ("CDRE") Renewed Motion for Summary Judgment

(**# 142**), the Plaintiffs' (collectively, "the Taylors") response (**# 149**), and Ms. Dopkin and

CDRE's reply (**# 156**); and Defendants David Panico and Janice Panico's (collectively, "the

Panicos") Motion for Summary Judgment (**# 145**), the Taylors' response (**# 150**), and the

Pancios' reply (**# 166**).

## FACTS

Summarized here and discussed in more detail in the analysis, this action concerns claims

that the Defendants misrepresented and concealed the condition of a parcel of real property they

1

sold to the Taylors.  In early 2005, the Taylors contacted Ms. Dopkin (through her real estate agency, CDRE[1]), for assistance in purchasing a parcel of real property in Aspen, Colorado.  The Taylors had recently sold another piece of property elsewhere and were required to purchase a qualified replacement property within a fairly short time period in order to obtain favorable tax treatment.  In addition, the Taylors advised Ms. Dopkin that, due to their medical conditions, any property they purchased would have to be free of mold contamination.

On February 24, 2005, the tax deadline for designating a replacement property, the Taylors entered into a contract with Ms. Dopkin, directing her to tender an offer to purchase a parcel of property owned by the Panicos.  The contract between the Taylors and Ms. Dopkin provided that Ms. Dopkin would be acting as a transaction broker in the sale – in other words, she would merely be arranging the sale and would not be acting as an agent for either the Taylors or the Panicos.[2]  The Panicos accepted the Taylors' offer.  At some point after accepting the offer,[3] the Panicos supplied the Taylors with a written property disclosure report that, among other things, recited a water leak in the foundation on one occasion many years ago and damage

---

[1]Although the parties offer some argument as to whether and what extent Ms. Dopkin is vicariously liable for the actions of CDRE and/or its employees, for the reasons discussed herein, it is unnecessary to conclusively address that issue.  Thus, the Court makes no meaningful distinction between Ms. Dopkin and CDRE in the discussion herein.

[2]There is some degree of dispute between the parties regarding the status that Ms. Dopkin occupied relative to the Taylors prior to February 24, 2005.  The Taylors allege that they considered Ms. Dopkin to be a buyer's agent, acting on the Taylors' behalf.  On the other hand, CDRE had previously entered into a contract with the Panicos to act as a seller's agent.  For the reasons discussed herein, whether Ms. Dopkin was acting as buyer's agent, seller's agent, in some form of dual-agency, or otherwise in the time before February 24, 2005 is ultimately irrelevant, and the parties agree that the contract designating Ms. Dopkin as transaction broker is dispositive of the issue thereafter.

[3]The Taylors apparently offered to purchase the property sight-unseen, having reviewed only a CDRE webpage with photos and a description of the property.

to some wire by rodents, but no other structural or water-related problems.

The Taylors requested that Ms. Dopkin arrange a local home inspector to examine the property.  There is a dispute between the Taylors and Ms. Dopkin as to the nature of the request (specifically, whether the Taylors requested that the inspection encompass mold contamination), but it is undisputed that on or about March 15, 2005, the Taylors contracted with AmeriSpec to conduct an inspection that did not include determination of the presence and extent of mold contamination.  The inspector's report notes various defects or problems with the property, including some evidence of rodent infestation (for which the inspector suggested further examination by a pest control professional), but observed no particular evidence of persistent water leakage.  Thereafter, Ms. Taylor traveled to Aspen to personally inspect the property.  When she arrived, an employee of CDRE gave her a copy of the inspector's report, stating that the inspector's findings were "acceptable."

Ms. Taylor did not reach the same conclusions following her own inspection.  Noting a variety of concerns about the nature and condition of the property (including an allergic reaction shortly after entering the house), Ms. Taylor told Ms. Dopkin that she intended to cancel the sale.  Ms. Dopkin reminded Ms. Taylor that cancelling the sale would result in forfeiture of the tax benefits and pointed out that the Panicos had been living in the house for many years without adverse effects.  Ms. Taylor eventually decided to proceed with the sale, which closed in May 2005.  Some months later, a comprehensive inspection of the home revealed numerous problems including significant mold contamination, water leakage, and rodent infestation.  The Taylors contend that remediation of all of the various defects in the home will cost in excess of $100,000.

The Taylors' Amended Complaint (# 45) asserts five causes of action: (i) fraudulent

misrepresentation against the Panicos, relating to various false statements they made about the condition of the property; (ii) fraudulent concealment against the Panicos, relating to their failure to disclose other information about the property; (iii) negligent misrepresentation in a business transaction against the Panicos, based on essentially the same misrepresentations referenced above; (iv) fraudulent misrepresentation against Ms. Dopkin, relating to Ms. Dopkin's representation that the property had been fully inspected and that the inspection results were acceptable; (v) breach of a statutory duty created by C.R.S. § 12-61-807 against Ms. Dopkin, in that she failed to exercise reasonable skill and care when advising the Taylors regarding the transaction and disclosing adverse facts about the property known to her.

Ms. Dopkin moves (# 143) for summary judgment on both claims asserted against her, With regard to the fraudulent misrepresentation claim, she argues: (i) the Taylors cannot establish that Ms. Dopkin herself made any false representations, (ii) CDRE cannot be held responsible for misrepresentations made by its employees without its authority and consent; (iii) that any representations as to the "acceptab[ility]" of the inspection report was a statement of opinion, not fact, and thus, is not actionable; (iv) that any representation as to the thoroughness of the inspection was not false, in that the inspector was not retained to perform a mold inspection and he noted all concerns he had about the property; (v) that the Taylors cannot establish that they relied on any misrepresentations by Ms. Dopkin or CDRE because they were able to read the inspector's report and Ms. Taylor personally visited the property; (vi) that any reliance by the Taylors on misrepresentations by Ms. Dopkin was unreasonable, given that Ms. Taylor personally inspected the property with the assistance of a contractor and identified numerous problems with it, and she noticed deficiencies in the inspector's recitation of the areas

4

he inspected; and (vii) the Taylors cannot show that any misrepresentations caused them to suffer damages because they cannot show that the house indeed has meaningful levels of mold. With regard to the breach of statutory duty claim, Ms. Dopkin and CDRE argue that: (i) as a transaction broker, Ms. Dopkin owed no particular duties to the parties on either side of the transaction, other than to disclose adverse facts about the property personally known by her and a duty to advise the parties to retain experts in matters that exceed Ms. Dopkin's expertise; (ii) to the extent Ms. Dopkin owed any duties, she did not breach those duties because the Taylors cannot show that the house is indeed affected by mold; and (iii) the Taylors suffered no damages, again because there is insufficient evidence of actual mold contamination.

The Panicos also move for summary judgment **(# 145)** on all claims against them.  With regard to all three claims asserted against them, the Panicos contend that the Taylors cannot show: (i) that they relied on any misrepresentations or concealment because the Taylors entered into a contract to purchase the property before ever speaking to the Panicos; and (ii) that any reliance was unreasonable given the inspection report and Ms. Taylor's own inspection of the property.

## ANALYSIS

### A.  Standard of review

Rule 56 of the Federal Rules of Civil Procedure facilitates the entry of a judgment only if no trial is necessary.  *See White v. York Intern. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Summary adjudication is authorized when there is no genuine dispute as to any material fact and a party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  Substantive law governs what facts are material and what issues must be determined.  It also specifies the elements that

must be proven for a given claim or defense, sets the standard of proof and identifies the party

with the burden of proof. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986);

*Kaiser-Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989). A factual

dispute is "genuine" and summary judgment is precluded if the evidence presented in support of

and opposition to the motion is so contradictory that, if presented at trial, a judgment could enter

for either party. *See Anderson*, 477 U.S. at 248. When considering a summary judgment

motion, a court views all evidence in the light most favorable to the nonmoving party, thereby

favoring the right to a trial. *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir.

2002).

　　　If the movant has the burden of proof on a claim or defense, the movant must establish

every element of its claim or defense by sufficient, competent evidence. *See* Fed. R. Civ. P.

56(e). Once the moving party has met its burden, to avoid summary judgment the responding

party must present sufficient, competent, contradictory evidence to establish a genuine factual

dispute. *See Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991); *Perry

v. Woodward*, 199 F.3d 1126, 1131 (10th Cir. 1999). If there is a genuine dispute as to a

material fact, a trial is required. If there is no genuine dispute as to any material fact, no trial is

required. The court then applies the law to the undisputed facts and enters judgment.

　　　If the moving party does not have the burden of proof at trial, it must point to an absence

of sufficient evidence to establish the claim or defense that the nonmoving party is obligated to

prove. If the respondent comes forward with sufficient competent evidence to establish a *prima

facie* claim or defense, a trial is required. If the respondent fails to produce sufficient competent

evidence to establish its claim or defense, the claim or defense must be dismissed as a matter of

law.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

## B.  Claims against Ms. Dopkin

### 1.  Fraudulent misrepresentation

To prove a claim for fraudulent misrepresentation under Colorado law, the Taylors must

establish: (i) that Ms. Dopkin knowingly misrepresented a material fact; (ii) that the Taylors

relied upon the misrepresented fact in deciding to act; (iii) that the Taylors' reliance was

justified; and (iv) that the Taylors suffered damages as a result of the reliance.  *Williams v.*

*Boyle*, 72 P.3d 392, 399 (Colo. App. 2003).

The Court turns first to the question of whether the Taylors can show that Ms. Dopkin

made any misrepresentations of material facts.  The Taylors incorporate by reference two alleged

misrepresentations discussed in Ms. Dopkin's motion – a false statement that the property had

been "thoroughly and professionally inspected" and a false statement that "the results of the

inspection were acceptable."  In addition, the Taylors allege that Ms. Dopkin made two

additional representations that were false: that "there was no time" to conduct a mold inspection

and that there "was no mold inspector in Aspen."  In her reply brief, Ms. Dopkin objects to the

Taylors' citation of these latter two opinions, arguing that they were not included in the

Amended Complaint.  The Court will briefly address that issue first.

Fed. R. Civ. P. 9(b) requires averments of fraud to be pled with particularity.  Typically,

a party asserting fraud is required to plead in the complaint the time, place, and contents of the

false statements; identity of the party making the statement; and the consequences that flowed

from the statement.  *Tal v. Hogan*, 453 F.3d 1244, 1263 (10th Cir. 2006); *Koch v. Koch Indus.*,

203 F.3d 1202, 1236 (10th Cir. 2000).  The Taylors' Amended Complaint gives no indication

that they intended to assert claims based on false representations as to the time available for an inspection or the availability of mold inspectors in Aspen.  However, the Federal Rules of Civil Procedure also contemplate that leave to amend pleadings should be liberally granted, absent a showing that the proposed amendment is prejudicial, in bad faith, or untimely.  *Beerheide v. Zavaras*, 997 F.Supp. 1405, 1409 (D. Colo. 1998), *citing Foman v. Davis*, 371 U.S. 178, 182 (1962).  Indeed, although it hardly endorses it, the 10th Circuit recognizes that new allegations raised in a summary judgment response may be treated as a motion for leave to amend.  *Martinez v. Potter*, 347 F.3d 1208, 1211-12 (10th Cir. 2003).

Deeming the Taylors' summary judgment response to be a motion for leave to amend the Amended Complaint to specifically identify the two additional misrepresentations at issue, the Court denies the request.  A few days after Ms. Dopkin filed her summary judgment motion, the Taylors' counsel moved **(# 143)** for leave to file a Second Amended Complaint.  Citing deficiencies in the pleadings submitted by their prior counsel, the Taylors sought to allege several new claims and to amplify the existing misrepresentation claim against Ms. Dopkin by including the additional misrepresentations mentioned above.  This Court referred that motion to the Magistrate Judge, and on March 3, 2009, the Magistrate Judge entered an Order **(# 180)** denying the motion on the grounds that the proposed amendment was the product of undue delay.  Although Fed. R. Civ. P. 72 allowed the Taylors to file objections to the Magistrate Judge's Order, they have not done so, and the time provided in that rule has passed.  Accordingly, the Magistrate Judge's Order has become final.  To the extent a request for leave to amend can be inferred from the Taylors' summary judgment response, that request adds no new argument to those considered and rejected by the Magistrate Judge.  Thus, treating the

Magistrate Judge's finding of undue delay as a conclusion of law based on the underlying facts, the doctrine of "law of the case" indicates that the Taylors' implicit request for leave to amend must be denied. *See generally Been v. O.K. Indus., Inc.*, 495 F.3d 1217, 1224 (10th Cir. 2007) ("the law-of-the-case doctrine generally dictates that prior judicial decisions on rules of law govern the same issues in subsequent phases of the same case"). Accordingly, the Court limits its inquiry to the two misrepresentations alleged in the Amended Complaint – that the inspection was "thorough and professional" and that the results of the inspection were "acceptable."

With regard to the Taylors' allegation that the characterization of the inspection as "thorough and professional" was false, the Court finds that the Taylors have failed to come forward with evidence to show that this assertion is false – *i.e.* that the inspection was performed in a less than thorough or professional manner.[4] The Taylors instead argue that the inspection was inadequate to meet their expressed concerns that the house be free of mold. Put differently, the Taylors argue that the inspection, while perhaps sufficiently thorough for ordinary circumstances, was insufficiently thorough to meet the particular heightened purposes for which they requested it. Taken in the light most favorable to the Taylors, there is ample evidence that the Taylors advised Ms. Dopkin that Ms. Taylor was particularly susceptible to mold allergies and wanted the house inspected for that purpose. It is also undisputed that the inspection did not seek to discover mold contamination, and thus, one might reasonably argue that the characterization of the inspection as "thorough" was false, given the particular purposes for which Ms. Dopkin knew the Taylors had requested it.

---

[4]Ms. Dopkin makes some reference to Ms. Taylor's belief that the inspector was not given access to the entire house, thereby preventing the inspection from being "thorough," but Ms. Taylor makes no such allegation in her summary judgment response.

Nevertheless, even if the characterization of the inspection as "thorough" was false, the Taylors have not shown that they reasonably relied on that representation.  Although Ms. Dopkin may have initially selected and retained the inspector, the record reflects that the contract for the inspection was reviewed and signed by Ms. Taylor. *Docket* # 95, Ex. 6.  That contract expressly states "MOLD EXCLUSION: [The inspector] is not responsible for discovering or reporting on the presence or absence of mold or mildew." *Id.*  Thus, even if the Taylors wished to have an inspection that would thoroughly examine the property for mold contamination, they were expressly advised by the inspector's contract that the inspection he conducted would not do so.  Moreover, the Taylors' brief expressly states that Ms. Taylor "confronted Ms. Dopkin about the lack of a mold inspection having been done." *Docket* # 149 at 4.  Thus, it is evident that the Taylors knew that the inspection had not been adequate to allay their concerns about the presence of mold in the house.  Even if Ms. Dopkin falsely stated to the Taylors that the inspection had been "thorough" enough to meet the Taylors' particular purposes, the Taylors could not have reasonably relied on that representation because they knew the truth to be to the contrary.  *See Brush Creek Airport LLC v. Avion Park LLC*, 57 P3d 738, 749 (Colo. App. 2002) (party may not rely on a misrepresentation where information equally available to both sides would have revealed the true facts).  Accordingly, to the extent the misrepresentation claim against Ms. Dopkin is premised upon a false assertion that the inspection was "thorough and professional," Ms. Dopkin is entitled to summary judgment on that claim.

The Court then turns to the allegation that the inspection report was "acceptable."  The parties argue at some length as to whether this is an actionable statement of fact or an inactionable statement of opinion.  Deeming something "acceptable" might be a statement of

unverifiable opinion in some circumstances, but in others – *i.e.* where the Taylors expressly advised Ms. Dopkin of their particular demands for the condition of the property – one might reasonably say that in deeming the report to be "acceptable," Ms. Dopkin was representing a fact to the Taylors – *i.e.* that the report adequately addressed all of their particular concerns. Ultimately, the Court need not consider whether the statement is one of fact or opinion because even if the Court treats that statement as falsely assuring the Taylors that the inspection report was "acceptable" in light of the particular concerns they expressed about the home being free of mold, the Taylors cannot show that they relied on that representation.

The record reflects that Ms. Taylor actually read the report herself shortly after it was handed to her, notwithstanding the oral representation by a CDRE employee that the inspection's conclusions were "acceptable." Once Ms. Taylor read the report, she would necessarily have formed her own opinions as to the acceptability of the report's conclusions, and thus, was no longer would be relying upon someone else's interpretation of those results. Moreover, the fact that Ms. Taylor "confronted Ms. Dopkin about the lack of a mold inspection" indicates that Ms. Taylor did not rely on the oral characterization of the report as resolving any concerns she might have had about the presence of mold. Finally, the record reflects that, despite the alleged "acceptab[ility]" of the report, Ms. Taylor conducted her own inspection of the property and, as a result, expressed her desire to cancel the purchase. Thus, the evidence is that Ms. Taylor rejected any conclusion about the "acceptability" of the inspector's findings and instead decided that the house was unacceptable. Under these circumstances, the Court finds that the Taylors cannot establish that they relied upon any oral characterization that the report was "acceptable," even if one treats that representation as being a false statement of fact. *See Bush Creek*, 57 P.3d

11

at 749.

Because the Taylors' fraudulent misrepresentation claim against Ms. Dopkin fail as to both alleged misstatements alleged in the Amended Complaint, Ms. Dopkin is entitled to summary judgment on this claim.

2.  Breach of statutory duty

The Taylors' second claim against Ms. Dopkin is one that sounds effectively in negligence – that is, that Ms. Dopkin failed to use reasonable care in performing her duties as broker.  To prove such a claim, the Taylors must establish: (i) that Ms. Dopkin owed them a legally-recognized duty; (ii) that they breached that duty; (iii) that the Taylors suffered injuries; and (iv) that the breach of duty was the proximate cause of those injuries.  *See e.g. Dotson v. Bernstein*, ___ P.3d ___ , 2009 WL 540645 (Colo. App. March 5, 2009); *Scott v. Matlack, Inc.*, 39 P.3d 1160, 1166 (Colo. 2002).

As relevant to the second element, Colorado law statutorily defines the particular legal duties owed by real estate brokers acting in various capacities in C.R.S. § 12-61-801 *et seq.*  Ms. Dopkin argues that the Taylors cannot show that she breached the statutory duties owed by transaction brokers – specifically, the duty to "suggest that [the Taylors] obtain expert advice as to material matters" beyond the expertise of Ms. Dopkin. C.R.S. § 12-61-807(2)(b).  The Taylors provide a two-tiered response.  First, they incorporate by reference arguments, raised in a response **(# 130)** to a prior summary judgment motion **(# 94)** by Ms. Dopkin, to the effect that Ms. Dopkin had previously acted in an impermissible dual-agent role and otherwise breached various requirements of the Colorado Brokerage Relationships statute.  Second, they contend that, assuming Ms. Dopkin was indeed acting as transaction broker only, she breached the

12

requirements of C.R.S. § 12-61-807(b)(II) by failing to advise the Taylors to obtain expert

advice about dealing with the problem of rodent infestation.  The Court specifically finds that the

Taylors' response to the instant motion does not contend that they can establish a claim for

breach of statutory duty with regard to Ms. Dopkin's failure to disclose her knowledge of matters

involving mold contamination and water drainage.[5]

---

[5]The Taylors' prior summary judgment response did briefly contend that Ms. Dopkin breached her duty under C.R.S. § 12-61-807(2)(b)(VI) (*i.e.* a duty to disclose material defects actually known by the broker to exist in the property) by failing to give notice to the Taylors of water drainage and water ingress problems.  *Docket* # 130 at 24.  However, the Court does not understand the Taylors' current summary judgment response to incorporate this prior argument by reference.  When the Taylors' current summary judgment response purports to incorporate prior arguments by reference, it does so only with regard to arguments that Ms. Dopkin violated the statute with regard to various dual-agency issues, *Docket* # 149 at 14 n. 5, and an argument that Ms. Dopkin's repeated violations of the statute remove her from the statutory "safe harbor" provisions.  *Id.* at 15 n. 6.  Notably, when discussing the particular defects with the house that they contend Ms. Dopkin should have addressed, the Taylors expressly state that they are "[s]etting aside the mold issue for the time being," and addressing only the rodent issue.  *Docket* # 149 at 15.

Thus, the Court does not understand that, for purposes of opposing summary judgment, the Taylors to intend to advance an argument that they can show that Ms. Dopkin failed to disclose her actual knowledge of mold contamination or water intrusion issues.  Even if the Court is incorrect, and the Taylors did intend to press such an argument for summary judgment purposes, the Court would find that the Taylors have failed to demonstrate a genuine issue of fact as to whether Ms. Dopkin had <u>actual</u>, as opposed to constructive, knowledge of any water- or mold-related defects with the house.  The only evidence cited by the Taylors regarding Ms. Dopkin's actual knowledge of such defects is the fact that CDRE had previously served as a seller's agent on behalf of the Panicos and that they "had the opportunity to view the property without snow."  *Docket* # 130 at 24.  A showing that Ms. Dopkin's "opportunity" to learn of a fact is not sufficient to show that she indeed had "actual knowledge" of that fact.  *See generally Baumgarten v. Coppage*, 15 P.3d 304, 207-08 (Colo. App. 2000) (distinguishing requirements in "actual knowledge" claims from requirements in "should have known" claims).  Moreover, the only evidence cited by the Taylors for their next assertion – that the water problems would have been "obvious to any person viewing the home without snow on the ground" – are photographs attached to an inspection report.  The author of the report does not opine that the defects would have been "obvious" to a broker viewing the house (much less set forth the necessary foundation under Fed. R. Evid. 702 to support such an opinion), nor can the Court find that the pictures themselves would permit a reasonable factfinder to conclude that the defect was so obvious that Ms. Dopkin should be charged with "actual knowledge" of the defect based solely on the fact

The Court disposes of the first line of argument quickly.  Nothing in the Amended Complaint gives notice to Ms. Dopkin that the Taylors' negligence claim is premised upon any dispute concerning Ms. Dopkin's dual-agent or other status prior to February 24, 2005.   The Amended Complaint specifically captions the negligence claim as being "Against Carol Dopkin . . . acting as Transaction Broker."  *Docket* # 45 at 15 (emphasis added).  The claim expressly cites duties that Ms. Dopkin allegedly breached under C.R.S. § 12-61-807, a statute that relates solely to transaction brokers.  The Amended Complaint gives no indication whatsoever that the Taylors are asserting a claim based on duties created by some other statutory section, nor does it purport to give notice to Ms. Dopkin of the manner in which she is alleged to have violated those other sections.  Thus, the Court finds that the Taylors have not sufficiently pled a claim for breach of duties created by any statute other than C.R.S. § 12-61-807.  To the extent the Taylors' summary judgment response can be construed as a request to amend the complaint to broaden the negligence claim to encompass breaches of other statutory duties, the Court denies such leave for the same reasons discussed above.[6]

Thus, the Court turns to the second issue – whether the Taylors can show that Ms. Dopkin breached C.R.S. § 12-61-807(2)(B)(II) by failing to advise the Taylors to consult an expert about the rodent infestation.  There does not appear to be a genuine factual dispute on this

---

that she had the "opportunity" to (*c.f.* actually did) view the home without snow on the ground.

[6]The Taylors' proposed Second Amended Complaint (**# 143**), which has been found to reflect undue delay by the Magistrate Judge, would have added a new claim against Ms. Dopkin for, among other things, failing to inform them about the "preexisting agency relationship with the Panicos."  *Docket* # 143, Ex. 1 at ¶ 112-15.  This is further evidence that the Taylors themselves do not believe that the current Amended Complaint clearly sets forth claims against Ms. Dopkin relating to her status prior to February 24, 2005.

issue: Ms. Dopkin appears to concede that they did not independently advise Ms. Taylor to consult a professional rodent exterminator with regard to the problem. Thus, it appears that Ms. Dopkin concedes that she breached C.R.S. § 12-61-807(2)(b)(II).[7]  However, Ms. Dopkin offers a persuasive argument that because the Taylors' inspector independently recommended that the Taylors consult a professional exterminator, the Taylors cannot show that Ms. Dopkin's breach caused the Taylors to suffer any damages.

There is no dispute that the Panicos' property disclosure form advised potential buyers of prior damage caused by rodents. *See e.g.* Docket # 45 at ¶ 24.  Moreover, the inspector retained by the Taylors noted evidence of rodent infestation in his report and recommended "consulting a pest control specialist."  Thus, a factfinder could not conclude that the Taylors were not adequately apprised of the rodent problem and the advisability of consulting a professional exterminator to address it.  The question presented, then, is whether the Taylors can show that, but for the failure of Ms. Dopkin to repeat that advisement, the Taylors would not have been injured.  The Taylors have offered no evidence to indicate that the reason they declined to adopt their inspector's recommendations was because Ms. Dopkin had not echoed it.  Indeed, although

---

[7]This Court has significant doubt that this particular subsection is properly invoked in these circumstances. It seems odd that subsection (2)(b)(VI) would require brokers to disclose knowledge that they have about "adverse material facts pertaining to . . . the physical condition of the property," but separately require via subsection (2)(b)(II) that brokers suggest the parties contact an expert with regard to these physical defects.  There are likely to be few situations in which a broker will be aware of a physical defect in a property (and thus is obligated to disclose under subsection (VI)), but the broker will actually have sufficient expertise to advise the parties as to how to address that defect (thus not incurring a simultaneous obligation under subsection (II)).  Rather than reading the statute to create an awkward set of dual obligations, a more likely interpretation of subsection (2)(b)(II) is that it is intended to require brokers to defer to experts on the many issues that arise during the handling of the sale transaction itself – *i.e.* tax consequences and planning, assessing affordability of mortgage payments, dealing with clouds on title, etc.

the Taylors' summary judgment response asserts that "But for the Dopkin Defendants' failure to advise them to retain a rodent expert, the Plaintiffs would have retained such an expert," they cite to no evidence supporting this conclusory assertion. *Docket* # 149 at 16-17. Thus, the Taylors have not demonstrated that there is a genuine dispute of fact as to whether Ms. Dopkin's breach of C.R.S. § 12-61-807(2)(b)(II) was the cause of their injuries.

Besides being insufficiently supported factually, the Taylors' theory on this point suffers from a legal defect as well. Although the Court does not necessarily view the case as controlling, it draws some guidance from Ms. Dopkin's cite to *Van Schaack v. Van Schaack Holdings, Ltd.*, 856 P.2d 15, 22 (Colo. App. 1992). In that case, involving a claim by a shareholder that corporate directors had breached a fiduciary duty to her by failing to disclose material information about the company's value, the Colorado Court of Appeals approved of a jury instruction that a failure to disclose certain information would not give rise to liability if the information that was not disclosed was already a matter of public knowledge; "[t]here is no duty," the court explained, "to disclose information to one who reasonably should already be aware of it." *Id.* Putting aside the fact that *Van Schaack* arises in an entirely different legal context than that here, the quoted language reflects a logic that is missing from the Taylors' conception of their claim. Although there is no caselaw considering the purposes to be served by C.R.S. § 12-61-807(2)(b)(II), it is apparent that this section is intended to insure that brokers do not exceed their area of expertise when advising the parties on how to proceed in the face of problems with a transaction. The Taylors' conception of this statutory duty would instead convert the statute into a wide-ranging "gotcha!" provision, whereby a broker would be responsible for failing to suggest that buyers retain a professional to address any physical defect

16

in a property, regardless of whether the need for professional assistance was already known or obvious to the buyer.  The results of such a situation would be absurd: under the Taylors' theory, in order to comply with the statute, a broker who receives a copy of an inspection report noting defects in the property would be independently required to sit down with the buyer and expressly repeat all of the inspector's recommendations for further consultations with professionals.   It simply defies belief that the legislature would require brokers to advise buyers of the need to consult experts when the buyer has been adequately advised of that need by his or her own agents.

Accordingly, without necessarily applying *Van Schaack* to C.R.S. § 12-61-807(2)(b)(II), the Court finds that the Taylors have not shown a legal or factual basis to support their contention that Ms. Dopkin's failure to suggest the retention of a pest control expert caused the Taylors to suffer injuries.  Thus, Ms. Dopkin is entitled to summary judgment on the negligence claim.  Ms. Dopkin's motion for summary judgment is granted in its entirety.

### C.  Claims against the Panicos

It is not necessary to recite the elements of each of the claims against the Panicos, as all three claims share the common element that the Taylors must have justifiably relied on any misrepresentation or omission by the Panicos, and it is only this common element that the Panicos address in their motion.  *Williams*, 72 P.3d at 399 (elements of fraudulent misrepresentation and concealment claims); *Campbell v. Summit Plaza Assocs.*, 192 P.3d 465, 477 (Colo. App. 2008) (elements of negligent misrepresentation claims).

The Court assumes, for purposes of this motion only, that the Panicos concede that their seller's disclosure form misrepresented and/or concealed material facts about water intrusion,

17

mold contamination, and rodent infestation.  The Panicos argue that, even if such misrepresentations and/or omissions were made, the Taylors could not justifiably rely upon them because it is undisputed that: (i) the Taylors agreed to purchase the property sight unseen; (ii) the Taylors were advised of problems with the home by their own inspector; (iii) Ms. Taylor conducted her own inspection; and (iv) both of the Taylors are licensed architects (and thus, should have recognized the possibility of the various defects in the property).

Each of these factual propositions are indeed undisputed.  Thus, the question is whether a reasonable factfinder could conclude from these facts that the Taylors justifiably relied on the Panicos' misrepresentations or omissions.  A reasonable factfinder could do so.

The mere fact that the Taylors made an offer on the property sight-unseen, before considering any misrepresentation or omission by the Panicos, does not defeat their ability to demonstrate justifiable reliance.  It is undisputed that the Taylors had the legal right to withdraw from the transaction following the inspections.  A factfinder could conclude that, by waiving the right to cancel the sale and instead proceeding to closing, the Taylors relied upon the Panicos' downplaying of the property's defects.

The fact that the Taylors had the benefit of independent inspections by a professional and by Ms. Taylor herself does not prevent them from relying on representations and omissions by the Panicos.  A buyer's inspection does not automatically nullify any prior misrepresentations or omissions made by a seller about the condition of the property, particularly where, as here, some of the misrepresentations concerned matters that might not be immediately apparent.  For example, the Taylors' inspector's report notes that because the home was occupied at the time of the inspection, "many areas are not visible or accessible."  It observed that "the foundation walls

were only partially visible" and thus, the inspector rendered no opinion as to the condition of the

portions that were not visible.   The Taylors might not have been justified in relying on

representations or omissions by the Panicos that directly contradicted conclusions the Taylors

reached as a result of their own inspections.   But the record does not reflect that either the

Taylors' inspector or Ms. Taylor herself personally inspected the particular areas where water

was intruding or mold was growing or that they had the opportunity or ability to fully assess the

extent of the rodent infestation.   As a result, in the absence of conclusive findings of their own,

the Taylors might reasonably have relied upon the Panicos' representations on these points.

Finally, the fact that the Taylors are both licensed architects does not preclude them from

showing that they justifiably relied on the Panicos' representations or omissions.   This Court

does not weigh the evidence, and thus, will grant summary judgment only if, as a matter of law,

the Taylors' training and experience prevents them from relying altogether upon the Panicos'

misrepresentations or omissions about the condition of the property.   Just as many professionals

specialize in discrete, narrow slices of their professions, it may be that the Taylors' architecture

experience does not encompass residential construction or the particular design of houses like

the one at issue.   Moreover, in the absence of authority to the contrary – and the Pancios cite

none – the Court is reluctant to adopt a *per se* rule that an individual's profession can be

dispositive of the question of reliance on a claim for misrepresentation or omission.   Were that

the case, it might become impossible for all accountants to assert claims for financial fraud, or

for all lawyers to claim to have been defrauded with regard to contractual language.   At trial, the

jury will have to opportunity to consider the extent to which the Taylors' training and experience

bears on the reasonableness of their reliance on the Panicos' statements, and the jury might

ultimately conclude that the defects in the property, if as pervasive and blatant as the Taylors allege, should have been obvious to a trained architect inspecting it.  But that is a question of fact to be resolved at trial, not a matter of law to be determined on summary judgment.

The Panicos also argue that the Taylors' summary judgment response does not specifically cite to evidence where the Taylors affirmatively state that, but for their reliance on the Panicos' representations or omissions, they would not have purchased the property.  This argument has some superficial appeal.

It is undisputed that, when Ms. Taylor expressed her intention to cancel the sale, Ms. Dopkin convinced her to proceed by pointing out that cancellation would have adverse tax consequences and that the Panicos had been living in the house for many years.  Admittedly, Ms. Taylor did not expressly testify that she relied upon the Panicos' representations in electing to proceed with the sale.  However, when considering a summary judgment motion, the Court must also draw inferences in the light most favorable to the Taylors.  One might reasonably infer that, when stating that they relied on the fact that the Panicos had lived in the house for years, the Taylors were saying that they were relying on the Panicos' misrepresentations (or omissions) that downplayed the defects in the house as being minor and intermittent, rather than on Ms. Taylors' own concerns that the various defects might render the property practically uninhabitable.  The issue of the Taylors' reasonable reliance on the Panicos' statements is not so clear-cut that a trial is unnecessary.

Accordingly, because the Court finds that the Taylors have come forward with facts that raise a genuine dispute of fact as to whether they reasonably relied upon the Panicos' misrepresentations or omissions, the Panicos are not entitled to summary judgment.

## <u>CONCLUSION</u>

For the foregoing reasons, Ms. Dopkin's Renewed Motion for Summary Judgment (**# 142**) is **GRANTED**.  The Court finds that, having disposed of all claims asserted against Ms. Dopkin and CDRE and there being no just reason for delay, judgment shall enter in favor of Ms. Dopkin and CDRE pursuant to Fed. R. Civ. P. 54(b) contemporaneously with this Order.   The Panicos' Motion for Summary Judgment (**# 145**) is **DENIED**.

Dated this 14th day of April, 2009

**BY THE COURT:**

Marcia S. Krieger
United States District Judge